UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.I.G.D.M., <br>        Plaintiff, <br>     v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br>        Defendant. | Case No. 5:17-cv-01149-SHK <br><br> OPINION AND ORDER |

  Plaintiff M.I.G.D.M.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

## I. BACKGROUND

Plaintiff filed an application for DIB on April 11, 2013, alleging disability beginning on May 15, 2012. Transcript ("Tr.") 148-54.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on December 17, 2015, ALJ Andrew Verne determined that Plaintiff was not disabled. Tr. 25-36. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on April 12, 2017. Tr. 1-6. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (citation omitted)). A reviewing

---

[2] A certified copy of the Administrative Record was filed on November 8, 2017. Electronic Case Filing Number ("ECF No.") 22. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps

one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

>	Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See id.

Id. at 1098-99.

**B.     Summary Of ALJ's Findings**

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2017." Tr. 27. The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since May 15, 2012, the alleged onset date (20 CFR 404.1571 et seq.)." Id. At step two, the ALJ found that "[Plaintiff] has the following severe impairments: internal derangement of the left knee, status post arthroscopic surgery of the left knee and status post left knee medial joint arthroplasty in August of 2014; and depressive disorder, not otherwise specified, with mild anxiety (20 CFR 404.1520(c))." Id. At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Id.

/ / /

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for two hours out of an eight-hour workday with regular breaks. She can sit for six hours out of an eight-hour workday with regular breaks. She can occasionally climb ramps and stairs. She can never climb ladders, ropes and scaffolds. She can occasionally balance and kneel. She can frequently bend, crouch, stoop and crawl. She should avoid concentrated exposure to extreme cold, vibration and uneven terrain. She must avoid even moderate exposure to hazards such as machinery. She can never work at unprotected heights. She can frequently push and pull with the lower extremities. She is limited to simple and repetitive tasks.

Tr. 29. The ALJ then found, at step four, that "[Plaintiff] is unable to perform any past relevant work [("PRW")] (20 CFR 404.1565)." Tr. 34.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on June 16, 1968 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563)." Id. The ALJ observed that "[Plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564)." Tr. 35. The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a))."

Id. Specifically, the ALJ found that Plaintiff could perform the "light, unskilled" occupations of "Cashier II," as defined in the dictionary of occupational titles ("DOT") at DOT 211.462-010, with 50,000 positions nationally available after eroding the number of jobs by seventy-five percent to account for Plaintiff's standing and walking limitation, and "Assembler, plastic hospital products, DOT 712.687-010," with 12,500 positions nationally available, after eroding the number of jobs that are nationally available by fifty percent to account for Plaintiff's standing and walking limitation. Id. The ALJ also found that Plaintiff could perform the "sedentary, unskilled" occupation of "Addresser, DOT 209.587-010," with 17,000 positions available nationally. Id. The ALJ based his decision that Plaintiff could perform the aforementioned occupations "on the testimony of the [VE]" from the administrative hearing, after "determin[ing] that the [VE's] testimony [wa]s consistent with the information contained in the [DOT]." Tr. 36.

After finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from May 15, 2012, through [December 17, 2015], the date of th[e] decision (20 CFR 404.1520(g))." Id.

**C.      Issue Presented**

In this appeal, Plaintiff raises 2 issues, including whether the ALJ erred by failing to resolve a conflict between: (1) the VE's testimony and the DOT; and (2) the VE's testimony and the Occupational Outlook Handbook ("OOH"). ECF No. 23, Pl.'s Mem. in Supp. of Compl. ("Pl.'s Mem."), at 5, 7.

**D.      Court's Consideration Of Plaintiff's First Argument**

      **1.      Conflict Between VE's Testimony And The DOT**

Plaintiff argues that an apparent conflict exists between the limitation to simple and repetitive tasks that the ALJ found Plaintiff had the RFC to perform, and the occupation of cashier II (DOT 211.462-010), which requires reasoning level

7

3. Id. at 6-7, 9 (citing Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015)). Plaintiff argues that the ALJ is required to resolve conflicts between the VE's testimony and the DOT and because the ALJ failed to do so here, "[t]he court should not consider the ALJ's reliance upon the identified occupation of cashier II as substantial evidence to satisfy the Commissioner's burden of proof" at step five. Id. at 6-7.

### 2. Defendant's Response

Defendant argues that any error that the ALJ may have committed by not resolving the conflict between the VE's testimony and the DOT was harmless, because "Plaintiff retained the ability to reason well enough to perform the cashier job." ECF No. 24, Def.'s Resp. to Pl.'s Mem. ("Resp.") at 2. Defendant also argues that Plaintiff's reliance on Zavalin—where the action was remanded for further proceedings to resolve "an apparent conflict between the RFC for simple work and reasoning level 3 jobs"—is misplaced because the facts of this case are distinguishable from those in Zavalin. Id. (citing Zavalin, 778 F.3d at 843-48). Specifically, Defendant contrasts Plaintiff's work history and impairments with those of the claimant in Zavalin, and argues that the facts in this case "demonstrate that Plaintiff's mental impairments would not preclude [Plaintiff] from performing the cashier II position." Id. at 3-4. Defendant argues that Plaintiff worked in the "semi-skilled" occupations of "janitor" and "general clerk for a pallet company" for eighteen years, whereas the claimant in Zavalin had no work history. Id. at 3. Defendant adds that doctors who examined Plaintiff found that she was "at best, mildly impaired" and the "ALJ limited Plaintiff to simple and repetitive tasks due to a depressive disorder, not to address any cognitive impairments, as in Zavalin." Id.

### 3. ALJ's Findings Relating To Plaintiff's RFC

In determining that Plaintiff was limited to simple and repetitive tasks, the ALJ noted that "a review of the medical record reflects no ongoing mental health

treatment and no use of psychiatric medications[,]" and "mental status reports are largely lacking aside from that of the consultative examiner, Dr. Reynaldo Abejuela," who examined Plaintiff on August 15, 2013. Tr. 33. The ALJ then discussed Dr. Abejuela's examination findings and observed that Plaintiff's "chief complaints were depression and anxiety" and that Plaintiff "appeared mildly depressed and mildly anxious" on the day of the examination. Id. The ALJ observed that "[t]here was no evidence of perceptual disturbances, hallucinations or delusions[,]" and that Plaintiff had "fair impulse control and adequate insight." Id. The ALJ observed that Plaintiff's "thoughts were logical and coherent[,]" there was no evidence of suicidal or homicidal ideations, and Plaintiff was alert and oriented to time, place and purpose on the day of the examination. Id. The ALJ observed that Plaintiff could perform serial threes and serial sevens, she could recall three out of three objects after three and five minutes, and she could perform simple calculations. Id. The ALJ noted that Dr. Abejuela diagnosed Plaintiff with depressive disorder, not otherwise specified, and mild anxiety. Id.

The ALJ concluded his discussion of Dr. Abejuela's examination findings by determining that "[d]espite the benign findings from Dr. Abejuela's examination and the lack of mental health treatment during the period at issue, I have given [Plaintiff] the benefit of the doubt and limited her to simple and repetitive tasks." Id. The ALJ later gave "little weight" to Dr. Abejuela's opinion, as well as to the opinions of the State agency psychological consultants, whose opinions the ALJ did not discuss, because "[t]hese doctors did not adequately consider [Plaintiff's] subjective allegations." Tr. 34.

**4. Standard to Review ALJ's Consideration Of VE's Finding**

"When there is an apparent conflict between the [VE's] testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846 (citing

9

Massachi v. Astrue, 846 F.3d 1149, 1153-54 (9th Cir. 2007)). "The ALJ must ask the expert to explain the conflict and then determine whether the [VE's] explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." Id. (citation and internal quotation marks omitted). An "ALJ's failure to resolve an apparent inconsistency may leave [the Court] with a gap in the record that precludes [the Court] from determining whether the ALJ's decision is supported by substantial evidence." Id. (citation omitted).

Level 3 reasoning requires the application of "'commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.'" Id. at 847 (quoting DOT, App. C, 1991 WL 688702). "Courts have found that a limitation to simple tasks performed at a routine or repetitive pace may be consistent with Reasoning Level 2." Skinner v. Berryhill, No. CV 17-3795-PLA, 2018 WL 1631275, at *4 (C.D. Cal. April 2, 2018) (citation and internal quotation marks omitted). "However, '[a]s one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine.'" Id. (quoting Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. May 25, 2005)). Therefore, "there is an apparent conflict between the [RFC] to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." Zavalin, 778 F.3d at 846.

An ALJ errs by "failing to reconcile this apparent conflict" through VE testimony. Id. Moreover, this error is not harmless when an ALJ limits a claimant to simple and repetitive tasks, but nevertheless finds that a claimant can perform the occupation of cashier as the occupation is defined at DOT 211.462-010,[3] which

---

[3] The Court in Zavalin noted that the duties of a cashier, as the occupation is defined at DOT 211.462-010, requires the "abil[ity] to compute bills, itemized lists, and tickets showing the amount due, reconcile the cash register's tape against cash on hand, and give cash refunds and

requires level 3 reasoning, because "as a cashier, reconciling the cash on hand against the cash register's tape and issuing credit memorandums to customers could contain situational variables that may not be simple or repetitive." Id. (citing DOT 211.462–010, 1991 WL 671840).

### 5. ALJ Erred By Failing To Reconcile Conflict Between The VE's Testimony And Plaintiff's RFC.

Here, the ALJ erred by failing to recognize, and reconcile through VE testimony, the apparent conflict between Plaintiff's RFC to perform simple and repetitive tasks, and the demands of level 3 reasoning required by the cashier occupation. Id. Moreover, the Court rejects Defendant's post-hoc argument—that Plaintiff could reason well enough to perform the occupation of cashier—because this conclusion is inconsistent with the ALJ's RFC limiting Plaintiff to simple and repetitive tasks. As discussed above, the Ninth Circuit addressed this exact conflict in Zavalin, and concluded that this error was not harmless because a cashier, as the occupation is defined at DOT 211.462-010—which is the exact occupation at issue in this case—could contain situational variables that exceed an RFC limitation to simple and repetitive tasks. Id. Accordingly, the Court finds that substantial evidence does not support the ALJ's conclusion that Plaintiff could perform the duties of a cashier, as the occupation is defined at DOT 211.462-010, because performing the duties of a cashier could require Plaintiff to perform tasks that exceed her RFC limitation to simple and repetitive tasks.

Because the ALJ opined that Plaintiff could nevertheless perform the occupations of Assembler, plastic hospital products, and Addresser, which cumulatively have 29,500 positions available nationally, and because 29,500 jobs

---

issue credit memorandums to customers for returned merchandise." Id. (citing DOT 211.462–010, 1991 WL 671840).

11

constitutes work that exists in significant numbers in the national economy[4], the Court turns next to Plaintiff's remaining argument that the ALJ erred by not addressing the alleged conflict between the VE's testimony and the OOH.

### E. Court's Consideration of Plaintiff's Second Argument

#### 1. Conflict Between VE's Testimony And The OOH

Plaintiff argues that she cannot perform the remaining two occupations of Assembler, plastic hospital products, and Addresser for two reasons. First, Plaintiff argues that these occupations require the performance of tasks that, according to the OOH, "require[e] a high school education or its equivalent, which the ALJ found [she] lacks." ECF No. 23, Pl.'s Compl. at 9. Second, Plaintiff argues that "she does not possess transferable skills that would allow her to perform what is in essence semi-skilled work" demanded by the plastic hospital products assembler occupation as the occupation is classified in the OOH. Id. at 8-9. Plaintiff concedes that "[w]hen a claimant has representation by an attorney, the claimant waives the right to claim that the job numbers testimony conflicts with the statistical data." Id. at 9. However, Plaintiff argues that she did not waive the issue in this case—of conflicts between the VE's testimony and non-economic data concerning education and training in the OOH—because the Commissioner takes administrative notice of the OOH and, thus, the ALJ has "a sua sponte obligation to resolve that conflict between testimony and matters of administrative notice." Id.

#### 2. Defendant's Response

Defendant responds by arguing that the ALJ does not have a sua sponte obligation to resolve apparent conflicts between the VE's testimony the OOH and,

---

[4] 25,000 jobs available nationally, although "a close call[,]" constitutes work which exists in significant numbers nationally. Gutierrez v. Comm'r Soc. Sec., 740 F.3d 519, 528-29 (9th Cir. 2014).

12

instead, Defendant argues that the "ALJ is only required to resolve apparent conflicts between the VE's testimony and the DOT." ECF No. 24, Resp. at 5.

### 3. Substantial Evidence Does Not Support The ALJ's Decision.

Here, the Court need not determine whether Plaintiff waived the issue of a potential conflict between the VE's testimony and the OOH by not raising it during the administrative proceedings, because there is an apparent conflict between the VE's testimony and the DOT. Specifically, the ALJ's RFC states that Plaintiff "must avoid even moderate exposure to hazards such as machinery." Tr. 29. However, according to the DOT, the Assembler, plastic hospital products occupation requires the ability to "seal[] package[s] using [a] sealing machine . . . and turn valves to admit gas into [a] chamber to sterilize product[s]." DOT 712.687-010. Accordingly, because the ALJ's RFC prohibits even moderate exposure to machinery, and the DOT's description of the Assembler, plastic hospital products occupation requires the use of machines to perform the occupation, the Court finds that an apparent conflict exists between the VE's testimony and the DOT.

As discussed above, the ALJ was required to resolve this conflict through VE testimony at the administrative hearing. Zavalin, 778 F.3d at 846 (citation omitted). Moreover, as also discussed above, Defendant concedes that the "ALJ is . . . required to resolve apparent conflicts between the VE's testimony and the DOT." ECF No. 24, Resp. at 5. However, the ALJ failed to do so here. See Tr. 64 (the ALJ asked the VE "[a]nd your testimony is consistent with the [DOT,]" to which the VE responded "[y]es" with no further inquiry made by the ALJ). This line of questioning failed to absolve the ALJ of his responsibility to find resolution to this apparent conflict. See Lamear v. Berryhill, 856 F.3d 1201, 1207 n.3 (9th Cir. 2017) ("The ALJ is not absolved of this duty to reconcile conflicts merely because

the VE responds yes when asked if her testimony is consistent with the DOT.") (citation and internal quotation marks and brackets omitted).

The ALJ's failure to resolve this apparent inconsistency left a gap in the record that precludes the Court from determining whether the ALJ's step five finding—that Plaintiff can perform the occupation of Assembler, plastic hospital products—is supported by substantial evidence in the record. Zavalin, 778 F.3d at 846. Accordingly, the Court finds that the ALJ's step five conclusion—that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform—is also not supported by substantial evidence because the only occupation remaining that Plaintiff could perform is that of an Addresser, DOT 209.587-010, which, according to the VE, has only 17,000 positions available nationally. See Gutierrez, 740 F.3d 519, 528-29 (25,000 jobs nationally available presents a "close call" as to whether work exists in significant numbers nationally).

As such, the Court finds that remand is appropriate to determine whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform at step five, despite the limitations set forth in her RFC.

### IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." (citation and internal quotation marks omitted)).

IT IS SO ORDERED.

14

DATED: 8/21/2018

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge